IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISING LLC, a Delaware Limited Liability Company; and DD IP HOLDER LLC, a Delaware Limited Liability Company;<br><br>*Plaintiffs*,<br><br>v.<br><br>RMG DONUTS, LLC, a Massachusetts Limited Liability Company; RALPH F. D'ALELIO, JR., an individual; GARY J. D'ALELIO, an individual; and MICHELE J. LAWLOR, an individual,<br><br>*Defendants*. | Case No. 1:19CV12395 |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' violation of one of their Franchise Agreements with Plaintiffs. Defendants breached the agreement by flagrantly violating Dunkin's operational standards relating to health, food safety, and sanitation at their former Dunkin' shop. Defendants' shop was recently the subject of extensive media coverage of mice running throughout the shop. Dunkin' immediately required that Defendants close the shop and cure their defaults. Defendants failed to cure the health and sanitation issues present. Accordingly, Plaintiffs sent Defendants a Notice of Termination terminating their Franchise Agreement. Moreover, Defendants' continued use and enjoyment of Plaintiffs' trademarks, trade names, and

trade dress after the effective date of the termination of the Franchise Agreement is a violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. Plaintiffs seek monetary, injunctive, and other relief against Defendant for the reasons set forth below.

## PARTIES

1. Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to operate Dunkin' shops throughout the United States. Dunkin' franchisees are licensed to use the Dunkin' trade names, service marks, and trademarks and to operate under the Dunkin' system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademarks, service marks, and trade names "Dunkin'" and "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchising LLC and DD IP Holder LLC are hereinafter collectively referred to as "Dunkin'."

3. DB Master Finance LLC, a Delaware limited liability company, is the sole member of Plaintiffs DD IP Holder LLC. In turn, the sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company. The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited

3

liability company. The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company. The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company. The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company. The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is in Canton, Massachusetts.

4.  The sole member of Plaintiff Dunkin' Donuts Franchising LLC is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business at Canton, Massachusetts. In turn the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC. As stated above, DB Master Finance LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.

5.  Defendant RMG Donuts, LLC is a Massachusetts limited liability company with its principal place of business in Massachusetts. Defendant RMG Donuts was the owner of a Dunkin' shop located at 13-15 Maverick Square, East Boston, Massachusetts, pursuant to a Franchise Agreement dated August 23, 2006.

6.  Defendant Ralph F. D'Alelio, Jr. is a natural person and, upon information and belief, a citizen and resident of the Commonwealth of Massachusetts. Defendant Ralph F. D'Alelio, Jr. is a member of the RMG Donuts and personally guaranteed its obligations under the Franchise Agreement pursuant to an executed personal guarantee.

7.  Defendant Gary J. D'Alelio is a natural person and, upon information and belief, a

citizen and resident of the Commonwealth of Massachusetts. Defendant Gary J. D'Alelio is a member of the RMG Donuts and personally guaranteed its obligations under the Franchise Agreement pursuant to an executed personal guarantee.

8. Defendant Michele J. Lawlor is a natural person and, upon information and belief, a citizen and resident of the Commonwealth of Massachusetts. Defendant Michele J. Lawlor is a member of the RMG Donuts and personally guaranteed its obligations under the Franchise Agreement pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1338, & 1367(a).

10. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## BACKGROUND FACTS

### The Dunkin' System

12. Dunkin' is the franchisor of the Dunkin' franchise system.

13. DD IP Holder LLC is the owner of the trademarks, service marks, and trade names "Dunkin'" and "Dunkin' Donuts," and related marks (referred to hereinafter as the "Dunkin' Marks"). Dunkin' has the exclusive license to use and to license others to use the Dunkin' Marks and has, along with its predecessors, used them continuously since approximately 1960 to identify its donut shops, and the donuts, pastries, coffee, and other

4

products associated with those shops.

14. DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts," and related marks. Among those registrations are Registration Nos. 748,901; 1,148,165; 3,328,278; and 4,290,078. Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

15. The Dunkin' Marks are distinctive and famous and have acquired secondary meaning.

16. The Dunkin' Marks are utilized in interstate commerce.

17. The Dunkin' Marks have been very widely advertised and promoted by Dunkin' over the years. Since 1971, Dunkin' and its franchisees spent over $2.5 billion on advertising and promoting the Dunkin' Marks.

18. Dunkin' franchisees currently operate more than 12,000 restaurants worldwide, including over 9,500 restaurants in the United States. Dunkin' shops feature Dunkin's distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than sixty years since the Dunkin' system began, millions of consumers have been served in Dunkin' shops.

19. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Marks, the public has come to know and recognize the Dunkin' Marks, and to associate them exclusively with products and services offered by Dunkin' and its franchisees. The Dunkin' Marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin', representing and embodying Dunkin's considerable goodwill and favorable reputation.

**Obligations Under the Franchise Agreement**

20. Under the Franchise Agreement, Defendants agreed to use the Dunkin' Marks, including but not limited to, its trademarks, service marks, logos, emblems, trade dress and other indicia of origin, only in the manner and to the extent specifically licensed by the Franchise Agreement. (Franchise Agreement § 7.1).

21. Pursuant to the Franchise Agreement, Defendants agreed to operate their franchise in accordance with Dunkin's operational standards, including but not limited to complying with all of Dunkin's requirements relating to health, food safety, and sanitation (the "Standards"). (*Id.* §§ 5.0.2, 5.1.6.)

22. Defendants agreed to cure any violation of Standards relating to health, sanitation or safety within twenty-four hours after delivery of written notice of default. (*Id.* § 9.1.2.)

23. Defendants agreed that if they did not cure a default relating to health, sanitation or safety within the time provided under the Franchise Agreement, that Dunkin' would have the right to immediately terminate the Franchise Agreement. (*Id.* § 9.4.)

24. Defendants also agreed not to perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Dunkin' Marks and Dunkin' System. (*Id.* § 8.0.1.)

25. Defendants agreed that upon the termination of the Franchise Agreement, among other things, their right to use the Dunkin' Marks and system would cease, and that they would immediately cease to operate the franchised business, cease to use the proprietary marks and system, and would not, directly or indirectly, hold themselves out as present or former franchisees of Dunkin'. (*Id.* §§ 9.4.2, 9.4.3).

26. Defendants also agreed that they would promptly pay Dunkin' all sums owing and any damages, interest, costs, and expenses, including reasonable attorneys' fees, incurred as a

result of Defendants' defaults. (*Id.* §§ 9.3 9.4.8.)

**Defendants' Defaults**

27. Defendants breached the Franchise Agreement by committing the conduct described below.

28. On November 19, 2019, Dunkin' was alerted to a Facebook post regarding a pest infestation at Defendants' shop. Dunkin' personnel drove to the shop and required it to close immediately upon observing serious violations of Dunkin's Standards for health, food safety, and sanitation, including evidence of rodents, fruit flies, cockroaches, and unapproved pest management systems. Defendants' conduct caused wide-spread negative media coverage. *See, e.g.*, https://www.wcvb.com/article/boston-dunkin-closed-after-video-shows-mice-running-around-inside/29850016.

29. On November 20, 2019, Dunkin' hand-delivered to Defendants a Notice of Default/Notice to Cure, which identified the Standards violations present at the shop and demanded that they be cured within twenty-four (24) hours, pursuant to Section 9.1.2 of the Franchise Agreement.

30. On November 21, 2019, Defendants' shop was inspected and once again found to be in default of Dunkin's Standards and not to have cured the defaults identified in the November 20th Notice of Default/Notice to Cure.

31. Accordingly, pursuant to the applicable provisions of the Franchise Agreement, on November 21, 2019, Dunkin' sent Defendants a Notice of Termination. The Notice of Termination terminated the Franchise Agreement, stated the grounds for termination, and requested that Defendants immediately comply with their post-termination obligations as set forth in the Franchise Agreement.

32. Notwithstanding Defendants' breaches of the Franchise Agreement, the resulting

termination of the Franchise Agreement, and the Notice of Termination, the Defendants have continued to operate the shop using the Dunkin' system and Dunkin's Marks without having any right or license to do so.

## COUNT I
### (Breach of Contract - Breach of Franchise Agreement)

33. The allegations of paragraphs 1 through 32 are hereby incorporated by reference.

34. Dunkin' has performed all of its obligations under the Franchise Agreement.

35. Defendants' conduct described herein constitutes breaches of the above-described contractual obligations contained in the Franchise Agreement.

36. These breaches constitute good cause for terminating the Franchise Agreement.

37. As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Trademark Infringement)

38. The allegations of paragraphs 1 through 37 are hereby incorporated by reference.

39. The use in commerce of the Dunkin' Marks and trade names by Defendants outside the scope of the Franchise Agreement and without Dunkin's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendant are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin'. Such unauthorized use of Dunkin's Marks infringes their exclusive rights in their trademarks under Section 32 of the Lanham Act, 15 U.S. C. § 1114 and applicable state law.

40. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

41. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Unfair Competition)

42. The allegations of paragraphs 1 through 41 are hereby incorporated by reference.

43. The use in commerce of Dunkin's Marks by Defendants outside the scope of the Franchise Agreement and without the consent of Dunkin' is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin's Marks violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

44. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

45. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (Trade Dress Infringement)

46. The allegations of paragraphs 1 through 45 are hereby incorporated by reference.

47. Defendants' shop is identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin'" and "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' uses for the donut shops operated by their licensees.

48. The use by Defendants of trade dress that is identical to the Dunkin' trade dress

9

1642997.1

outside the scope of the Franchise Agreement constitutes a false designation of the origin of Defendants' shop, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shop with the Dunkin' shops operated by Dunkin's licensees. Such adoption of the Dunkin' trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

49. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

50. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a. Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreement, and constitutes good cause for terminating that agreement;

b. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement;

c. Enter a judgment in favor of Dunkin' for the damages incurred by them as a result of the breaches of the Franchise Agreement by Defendants;

d. Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

e. Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Dunkin', including but not limited to the Franchise Agreement and Option to Assume Lease Agreement, and to take all steps required to

transfer their leasehold interests in the shop to Dunkin' or its designee(s) in the event that Dunkin' elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

f.  Award Plaintiffs prejudgment interest in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

g.  Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreement and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

h.  Award Plaintiffs such other relief as this Court may deem just and proper.

Dated: November 22, 2019

Respectfully submitted,

*/s/ John A. Donovan III*
John A. Donovan III, BBO # 631110
Michael J. Maxey, BBO # 694719
Sloane and Walsh, LLP
One Center Plaza
Boston, Massachusetts 02108
Telephone:  (617) 523-6010
Facsimile: (617) 227-0927
JDonovan@sloanewalsh.com
MMaxey@sloanewalsh.com

David E. Worthen* (*pro hac vice* to be filed)
Plave Koch PLC
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
Telephone:  (703) 774-1200
Facsimile: (703) 774-1201
dworthen@plavekoch.com
(* not admitted in Virginia)

1642997,1